WATTERS and another, Appellants, vs. GLENDENNING and another, Respondents.

*February 24 — March 16, 1894.*

*Contracts: Acceptance of offer: Evidence of value: Perverse verdict.*

1. Where the vendees of machinery offered to allow the vendors to take it in satisfaction of their claim for an unpaid balance of the purchase price, the taking of the machinery by the vendors, a few days later, in the absence of the vendees, was an acceptance of such offer.

2. Upon the evidence in this case, showing among other things that machinery which cost $1,150 had been used only about one third of the time for less than a year, and was doing good work, a finding that the value thereof was $875 is *held*, though against the weight of evidence, not to be indicative of prejudice, passion, or perversity on the part of the jury.

APPEAL from the Circuit Court for *Oneida* County.

This action was brought to recover the amount of two promissory notes given by the defendants to the plaintiffs, one for $287.50, and the other for $580.72, less the sum of $50 paid June 4, 1892, and $400 paid June 22, 1892.   The answer was that these notes were given as part payment for certain planing-mill machinery purchased by defendants of the plaintiffs, May 15, 1891, of the value of about $1,400, and for which, at the time, the defendants made a cash

payment and gave the notes in suit, with others, for the balance of the purchase price; that on or about June 15, 1892, the defendants not being able to make payments then due on the notes, the plaintiffs' agent asked defendants if he could take back such machinery, and they told said agent that if he would take such machinery and cancel the indebtedness therefor and deliver up the notes then outstanding, he could go and take it, but not otherwise; that without further agreement, and while the defendants were absent from home, said agent went to their mill and took out said machinery and took the same away, and the plaintiffs have ever since held it and have not accounted or paid defendants therefor, and that it was worth $1,300 more than the amount remaining unpaid of the purchase price therefor.

Upon trial before the court and jury, a special verdict was found, namely: (1) "The plaintiffs' agent, W. E. Ottie, and the defendant *E. J. Glendenning* agreed that the plaintiffs should take the machinery in question in satisfaction of their claim against the defendants for the purchase price thereof." The uncontradicted evidence showed that the plaintiffs took the machinery out of the mill and carried it away while the defendants were absent from home. (2) "The value of the machinery taken by the plaintiffs at the time when taken was $875." The plaintiffs moved to set aside the verdict and for a new trial on the ground that it was contrary to law and to the evidence and was perverse; but the court denied the motion and gave judgment in favor of the defendants for costs of the action, from which the plaintiffs appealed.

For the appellants there was a brief by *Alban & Barnes*, and oral argument by *John Barnes*.

For the respondents the cause was submitted on the brief of *Miller & McCormick*.

PINNEY, J.   The finding of a jury will not be disturbed if there is any competent evidence to support it and it does not appear that the jury acted from prejudice or passion. It is not the duty of the jury to count the witnesses, but to weigh the evidence.   *Wausau Boom Co. v. Plumer,* 49 Wis. 118.   It is not clear that there was any decided preponderance of evidence either way upon the material question, namely, whether there was an agreement by which the plaintiffs took the machinery in question in satisfaction of their debt.   We think there was sufficient evidence, if believed by the jury, to support their finding on this issue; and where, as in this case, the circuit court was satisfied with the verdict, we cannot interfere to set it aside,. unless some rule of law has been violated, or there has been an abuse of discretion on the part of the court in denying the motion, or it is made manifest that the verdict was the result of prejudice or passion.

As to the agreement we have the testimony of two witnesses,— one of the defendants, *Glendenning,* and the plaintiffs' agent.   The former testified, in substance, that he and the plaintiffs' agent talked of removing the machinery for the debt, and he (*Glendenning*) said he thought that he would consent to his taking it out if he would cancel the debt, and added that he would like a week's time to consider of it, which the agent consented to grant; that before the week was up the agent went up there in defendants' absence, and took the machine out and took it away. He further testified that he told the agent if he would allow him enough to pay the debt he was perfectly willing he should take the machine out.   That he meant to be understood as saying: " If he wanted to take the planer out and cancel the debt he could do it.   He wanted security if the machine was left in, and he gave me a week to furnish the security.   I said right there he could take the planer out if he would cancel the debt.   I wanted the week to

secure the man." That he was willing to have him take it out if he could not have done any better. That he was willing that day for him to take it out. That he went to Wausau, and was to some expense to make some arrangements to pay for it, and he had partly made arrangements. That when he found the machine was gone he did not try to stop it. He denied that he ever consented to allow the agent to take it out on condition of being allowed for it any other sum or what it was reasonably worth. The plaintiffs' agent gave a different version of the matter, and testified that the conversation was that the plaintiffs would discontinue the lien they had filed on the machine if the defendants would let them take the machine at its value. "He [*Glendenning*] said that this was satisfactory, and, rather than have any trouble about it, he would rather I would take it out and allow him what was right." He denied that he agreed to let them have a week within which to furnish security for the debt. " On the Wednesday following, I shipped the machine out." That it was then worth $400, which was indorsed on one of the notes. He denied that he was to take the machine out and cancel the debt.

It was a fair question for the jury, upon the evidence, whether the defendants did not make the plaintiffs' agent an offer to allow him to take the machine out of the mill and cancel the debt. If the jury believed this version of the case, the taking of the machine out of the mill and taking it away, three or four days afterwards, was an acceptance of the proposition; and the plaintiffs, having received and retained the machinery, were bound to cancel the notes. The proposition to give the defendants a week in which to give security, if any such was made, was for their benefit, but the plaintiffs were not bound by it. It is not for them now to say that their removal of the machinery was not an acceptance of the defendants' offer they had

made to allow the machine to be taken out upon condition that the debt should be canceled. It is obvious from the testimony that the plaintiffs' agent acted in taking it out under the consent of the defendant *Glendenning*, whatever were its real terms. There is no pretense on the part of the plaintiffs that any other arrangement was made than the one testified to by their agent,— that they might take the machinery out and allow the defendants what it was worth. Both parties agree that the defendants consented that the plaintiffs should take out the machinery. The real difference between them, as disclosed by the evidence, was whether the plaintiffs were, in consideration thereof, to cancel the debt, or to allow the defendants thereon what the machinery was reasonably worth; and the jury, upon evidence sufficient to sustain the verdict, have found in favor of the defendants' contention.

The plaintiffs' counsel argues that the finding of the jury as to the value of the machinery was the result of prejudice and not of fair deliberation, and that there was no evidence to support it, and that the same feeling extended to and affected the finding as to the agreement. If the agreement was proved, the finding on the question of value became wholly immaterial, and the verdict would have been sufficient without it. It is true that the finding upon the question of value seems to be against the weight of evidence, but it is to be observed that the machine cost $1,150 when put into the mill, and it had been run only about one third of the time for a little less than one year, and was doing good work when taken out. One witness, who appeared to be familiar with it, testified in substance that an expenditure of $150 in repairs would make it as good as ever, and that he thought it was worth $600 or $700. The condition of the machine was described, and the testimony of the several witnesses as to its value was opinion evidence, and the jury had a right to consider all the facts

and circumstances bearing on the question of value, as well as the intelligence, means of knowledge, and candor or bias of any of the witnesses, and determine whether the machine had so far deteriorated as to be worth only $325 or $250, as one of the plaintiffs' witnesses testified, instead of $875, as found by the jury. While the finding on the question of value does not seem to be in accordance with the decided weight of evidence, as it appears to us in the record, still we do not think it is satisfactorily indicative of prejudice, passion, or perversity. In view of the testimony, we do not see any ground whatever for contending that the verdict as to the agreement (in respect to which there does not appear to have been any very decided preponderance of evidence either way) was perverse.

For these reasons, we are of the opinion that there is no error in the judgment of the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.